Please the court my name is Anthony Ury I represent the appellant I would like to reserve three minutes for trial counsel Admiral Horton Smith who would like to do the rebuttal. This case your honor really arises out of whether or not there is jurisdiction and in order to discuss that issue I'm going to first discuss the Chute v. Carnival Cruise case which is a Washington Supreme Court case of 113 Washington 2nd 763. The Washington Supreme Court in that case interpreted Washington's long-arm statute RCW 4.28.185 and in doing so the interpretation in the analysis that the Supreme Court did was to indicate that the following factors must coincide and the court virtually looked at the different portions of that statute and ruled and I quote the court said the non-resident defendant must purposely do some act or consummate some transaction in the form of state. The cause of action must arise from or be connected with such act or transaction and three the assumption of jurisdiction then must by the forum state must not offend traditional notions of fair play substantial justice using the balancing test of would it be unfair to hail the foreign defendant into that court what are the forum non-convenience balancing test issues. Now counsel what act in the state of Washington is can be at all connected with this claim. Yes your honor. That's your problem I think. Yes the Washington Supreme Court in Chute used the but-for test. Now to answer your question but for the fact that the owners of the sling-dang IU brought their vessel into this port for five days used the moorage here took on 60,200 tons of soybean and purchased according to the thousand metric ton which I calculate to be around 300,000 gallons of toxic bunker fuel. But for taking on that bunker fuel in Seattle the vessel owners and the ship could never have later eight or nine days later spilled that same bunker toxic bunker fuel into the ocean off of Alaska. So it's the but-for it would have been physically impossible had they not purposefully availed themselves of the privilege and usage of our port and our facilities and the ability to purchase that toxic bunker fuel that same toxic bunker fuel could never have been dumped into the ocean in Alaska. So if they came from New York and bought fuel five times along the way your argument would be that in each of the five jurisdictions they stopped there'd be jurisdiction because they could have never gotten to Alaska they hadn't bought fuel is that it? Well that's a but-for isn't it? Well in fact if the captain hadn't been born in England he couldn't have gotten the thing to Alaska either so I guess but-for is birth in England so England would also be a place? Well try to answer that question your honor. Sure. In the Chute case Mrs. Chute lives in Arlington Washington bought her carnival cruise ticket through a travel agent. Answer my question. I understand that case. Answer my question. Your argument would be that if they stopped in six different states on the way getting to Alaska and bought fuel there or bought something to keep the boat going then that would be a good place for jurisdiction is that correct? I believe that a good place for jurisdiction would be the last port of call. Why? Each one but-for having obtained fuel in each one of them and you said we've got to follow a strict but-for test I think you said so but-for doing that they couldn't have gotten to Alaska so your argument be each one would be a good place? Well on your theory. Yes on the theory the last every port could be a place where jurisdiction may be appropriate if upon using the other the third factor the I think it's but-for plus the the Washington Supreme Court's third interpretation would it would also if you meet the but-for test would it therefore violate due process this you know the the substantial notions of fair play and substantial justice on balancing witness availability forum non-convenience and would it be unfair to even if we even if we thought that formulation of International Shoe and Burger King was appropriate what what notions of fair play suggest that Washington is an appropriate forum for a spill that occurred in Alaska? Because particularly compelling in this case is but-for the fact they purchased 300,000 gallons. Are you going to call the people who put who put the gallons into into the into the ship that's not really a we're not going to call the people who put the who put the fuel into the into the ship but that's that's not an issue here is it? Are there any witnesses that would be relevant to your cause of action that are that reside in Washington? Yes your honor. Who? The the plaintiffs reside here the fishermen that are claiming economic harm they many of them. They didn't suffer any economic harm in fishing off the coast of Washington did they? No the spill occurred in Alaska. Yeah but what possible interest is Washington have in this case? Washington's interests are that when foreign defendants who do not reside anywhere else in the United States use the privilege of Washington ports in furtherance of their economic activity which is to haul soybean. Yeah that might be the case if Washington if if the cause of action arose out of the it doesn't. You're concerned about the Alaskan crab market but why should why should want the courts of Washington federal or state involved in adjudicating disputes between crab fishermen fishing in Alaska and a foreign vessel? Because many of those crab fishermen are part of the Seattle based in the complaint Mr. Smith alleged that many of those crab fishermen are part and parcel of the quarters here. They're members they're the most of the crab boats that fish in the Bering Sea are home ported in this port. Counsel what arguments did you present to the district court? Did you present to the district court your but-for argument that you're presenting to us today? I I would your honor from the the pleadings Mr. Smith who was then the counsel did make I believe the but-for argument and raised the shoot case. What was the response of the district court? The district courts did not find jurisdiction the case was dismissed on a I understand that but did it address your theory of but-for liability? I don't believe that that well it was raised but I don't think it was completely addressed I don't think the all the arguments were the factual arguments were. Can you tell us exactly how it was raised before the district court? Well the in the district court the the district court did not find that there was adequate context essentially I maybe I'm not answer you I don't mean to not answer your question appropriately. Mr. Smith can appropriately deal with that. Okay we'll reserve the rest of your time let's hear from thank you hear from the Mollie Henry for Appellee's IMC Shipping and IU Navigation. The district court was asked to decide two questions below. First whether they complaint against the foreign defendants in Washington seeking log lost crab fishing profits as a result of a grounding and oil spill in Alaska should be dismissed for lack of personal jurisdiction and second in the on the basis that even if jurisdiction did exist in Washington there are no facts to support the plaintiff's allegations of economic harm. The evidence before the district court was straightforward and it was factually unopposed. Declarations from IMC and IU Navigation established that their only contact with Washington prior to the ship's grounding in Alaska was the appointment of a protective agent in November of 2004 to oversee inspection of the ship's cargo holds for cleanliness. They established that the inspection of the cargo holds had nothing to do with the vessel's ultimate grounding in Alaska and they also established that the vessel was under time charter at the time it called in Seattle and that the time charter had directed the vessel to Seattle. The appointment of the limited agent by IMC was a fortuitous contact with Washington necessitated only by the time charter's decision to call there and in support of their alternative motion for summary judgment the defendants submitted numerous signed declarations from individuals involved in the Alaska crab fishing industry who all stated that there was no merit to the plaintiff's allegations that the Selandang-IU's grounding had an adverse impact on either the price of Alaska crab or the amount of crab caught in the Bering Sea. These included declarations from the Alaska Crab Coalition based here in Seattle, the State of Alaska Department of Fish and Game biologists, fishery experts, crab fishermen who were in Alaska at the time of the grounding and fished in the Bering Sea fisheries following the Selandang-IU's grounding, crab processors, and even the plaintiff's former employer. All of these individuals have personal knowledge of the effects of the Alaska oil spill on the crab fishing industry and they all agree that there is no merit to the plaintiff's allegations of economic harm. The Given this undisputed evidence, the district court properly found that there was no basis to exercise personal jurisdiction over the foreign defendants in Washington and that even if there were, it would have granted summary judgment because the plaintiff failed to come forth with any evidence to substantiate his claims of economic harm. This court can affirm the district court's dismissal on any grounds supported by the record and in this case the record supports dismissal for lack of personal jurisdiction but even if that were not the case, the evidence clearly and indisputably supports a dismissal on summary judgment grounds. I'd like to address a few of the arguments raised by the plaintiff in this appeal in regards to the issue of personal jurisdiction. First of all, it was the plaintiff's bargain to present evidence of personal jurisdiction in response to the defendant's motion to dismiss on those grounds. Counsel, let's suppose that we agree with you on your arguments about personal jurisdiction. Is there any reason that we can address the district court's argument in the alternative or holding in the alternative that summary judgment ought to be granted? No. If there's no jurisdiction in the district court below, then the district court probably held that it could not address the summary judgment argument. However, in the alternative, if this court were inclined to find that there were jurisdiction or as counsel for the plaintiff asked in the last sentence of the reply brief before this court for a transfer to Alaska, our response would be that there are no merits to the plaintiff's claims and it would not be in judicial economy to transfer. But that's a 1631 transfer? Right. Correct. Okay. But that would have to be addressed to the district court. That's not something that we would rule on. That's correct. We're not going to order the transfer? No. Okay. So if we agree with you that personal jurisdiction in Washington fails, then that should be the extent of our judgment. That's correct, Your Honor. We should not reach the summary judgment question. No. But you're free to, of course, reach the issue should you find that there are sufficient minimum contacts with the state of Washington. And the record also supports dismissal on the merits of the claims. Is it strategic for you to urge the court to find personal jurisdiction over your client here and then dismiss on the grounds of summary judgment? Absolutely not, Your Honor. In regards to the plaintiff's argument for the but-for test under the Washington State Supreme Court shoots versus carnival cruise lines, that case interprets the second prong of the due process analysis, which is whether the plaintiff's claim or cause of action arose out of the defendant's contacts with the state of Washington. And the record is clear that the only contact the defendants had with the state of Washington was the appointment of a protective agency agent to oversee the inspection of the cargo holds. Contrary to what the plaintiff suggests, there's a declaration by an individual named Blond Cain in the district court below at supplemental excerpt of records 34 that makes it clear that the defendants in this case did not actually even purchase bunker fuel in the state of Washington. It was the time charters who purchased the fuel. So even if there were merit to the argument that but-for the stop in Washington, the vessel would not have made it to Seattle or to Alaska, pardon me. That's contrary to the facts in the record. And more importantly, the court need not address the plaintiff's complicated but-for argument in this case because the plaintiff has failed to address whether the defendants purposely availed themselves of Washington and whether assertion over the defendants in Washington would be reasonable. In conclusion, the record here provides ample support for dismissals of the defendants on the basis of lack of personal jurisdiction. So unless the panel has any further questions. Thank you. Mr. Smith, I think you have a little, a minute and a half. Thank you, Your Honor.  In the absence of purposeful availment, this foreign ship, Malaysian by flag, made use of the circumstances here in Seattle to, number one, take on cargo, soybeans. And when she fractured in Alaska, those soybeans were all over the sea. In addition to that, her own aspect of the fuel oil that she'd taken on here, 330,000 gallons, Nod. Also, excuse me, went all over the sea in terms of the area of Alaska in Unimac Pass. That deserves attention. My client, Mr. Haynes, is a crab fisherman. He was damaged. It's not only him, but it's the other potential crab fishermen that are in that area. I say to you that when a ship comes to Seattle, and it's in the circumstance of having its engine examined, which was this case, they failed. Basically, it comes right down to negligence. They didn't fight.  And the lining of cylinder number three went down. The whole aspect of propulsion went down. Basic due process. Counselor, you may want to wind up your time. You've used your time. Right. And so, as I say, this case just calls for attention and for the aspect of relief to a seaman who is in need of assets and holding the responsibility of a foreign flagship. And it is clear under the law that this is one that he should have his relief for. Thank you. Haynes v. M.D. Selandang, IU, is submitted. And with that, the court will take a brief recess. We'll be back in five minutes.
judges: Fletcher B. , Fernandez, Bybee